## 23214

Steven W. HAMM, Consumer Advocate for the State of South Carolina, Appellant v. SOUTHERN BELL TELEPHONE AND TELEGRAPH COMPANY and the South Carolina Public Service Commission, Respondents.

(394 S.E. (2d) 311)

Supreme Court

*Steven W. Hamm, Raymon E. Lark* and *Natalie J. Moore,* all of *S.C. Dept. of Consumer Affairs,* Columbia, *for appellant.*

*Fred A. Walters,* of *Southern Bell Telephone and Telegraph Co., Marsha A. Ward,* of *S.C. Public Service Com'n,* and *A. Camden Lewis, of Lewis, Babcock, Pleicones & Hawkins,* of Columbia, *for respondents.*

Heard Jan. 22, 1990.

Decided May 7, 1990.

TOAL, Justice:

In this appeal the Consumer Advocate contests the validity of an approved rate increase for Touch-Tone dialing telephone rates requested by Southern Bell Telephone and Telegraph Company. We reverse.

## FACTS

This case involves three separate orders of the Public Service Commission (PSC). The Consumer Advocate (Advocate) participated in each of the hearings leading to the three orders.

In Order No. 87-982, the PSC mandated that all local exchange telephone companies must offer multi-jurisdictional WATS lines services, as opposed to separate intrastate and interstate WATS lines. This order also noted that local telephone companies may suffer an intrastate revenue deficiency as a result of the decision. Finally, the order directed that, if a company should suffer a loss, it should seek approval of rate increases to offset that loss, provided that such rates affect optional services only and not local basic exchange services.

Southern Bell Telephone and Telegraph Company (Southern Bell) filed for a rate increase for its Touch-Tone calling services in order to offset an alleged loss caused by Order No. 87-982. The proposed rate increase would generate $4.2 million in revenues for Southern Bell. In Order No. 88-137, the PSC approved the rate increase application in the amount of $3 million. However, the PSC failed to make a specific finding that Southern Bell had sufficiently demonstrated entitlement to a rate increase. Moreover, Southern Bell failed to introduce any of the studies or data allegedly relied upon by its experts which served to demonstrate such entitlement.

The Advocate petitioned for a rehearing and reconsideration of Order No. 88-137. One ground asserted by the Advocate for reconsideration was that "there was no underlying evidentiary support in the record" demonstrating Southern Bell's anticipated loss. *(See* Tr. 24). The PSC then issued Order No. 88-283, in which it attempted to more

comprehensively address the issues involved in Order No. 88-137. The PSC pointed to certain testimony in support of its view that Southern Bell had sufficiently demonstrated that it would suffer a loss at least commensurate with the $3 million approved rate increase.

The Advocate next sought judicial review and a reversal of the latter two PSC orders. The Circuit Court affirmed the PSC orders and the Advocate timely appealed.

## LAW/ANALYSIS

The Advocate argues, *inter alia,* that the Circuit Court should be reversed because the PSC erred in approving a rate increase based on speculative, unsubstantiated losses rather than proven ones. We agree.

In Order No. 88-137, the PSC notes that the Advocate presented one Mr. Buckalew as an expert who opined that Southern Bell's losses were speculative. Next, the PSC states, "[c]ompany witness Payne gave rebuttal testimony concerning allegations made by Mr. Buckalew during his testimony in the proceeding. Specifically, witness Payne's testimony addressed Mr. Buckalew's allegations concerning revenue losses . . ." (Tr. 20). In its "Findings and Conclusions" in Order No. 88-137, the PSC recited simply that Southern Bell's requested rate increase should be approved. In Order No. 88-283, the PSC's order reconsidering Order No. 88-137, there is merely a repetitive finding that there was factual support in the testimony of Mr. Payne which demonstrated Southern Bell's losses.

As an initial matter, these "findings" by the PSC run afoul of our decision in *Able Communications, Inc. v. South Carolina Public Service Comm'n,* 290 S.C. 409, 351 S.E. (2d) 151 (1986). We stated in *Able Communications, Inc.* that "[t]he findings of an administrative body must be sufficiently detailed to enable the reviewing court to determine whether the findings are supported by the evidence and whether the law has been properly applied to those findings." 290 S.C. at 411, 351 S.E. (2d) at 152. We further noted there that "[w]here material facts are in dispute, the administrative body must make specific, express findings of fact." *Id.* Finally, we specifically held there that, "a recital of conflicting testimony followed by a general con-

clusion is patently insufficient to enable a reviewing court to address the issues." *Id.* No more than a recital of testimony and a general conclusion exist here.

The Advocate would have us go further and hold that as a general rule the PSC is without authority to adjust a rate based on proven and measurable changes to occur in the future.[1] The Advocate takes the position that, when making a rate adjustment, the PSC must only consider historical data. We reject this argument, as we can imagine contexts in which it would be entirely inappropriate for the PSC to refuse to consider a future event when adjusting rates.[2] Moreover, in *Southern Bell v. The Public Service Commission,* 270 S.C. 590, 244 S.E. (2d) 278 (1978), we approved the historical test year as a basis for calculating a utility's rate base, as long as adjustments were made for any *known* and *measurable out-of-period* changes in expenses, revenues and investments which would materially alter the rate base.

It has been past practice to remand cases which violate our rule in *Able Communications, Inc.* in order for the PSC to point to the specific factual basis of record for its findings of fact. Here, however, a remand is not necessary as there is no factual basis of record to which the PSC may point in support of its findings. "A commission is generally given a wide range of discretion in utility rate cases, however, that discretion cannot be exercised without a factual basis to support the commission's decision." *Hamm v. South Carolina Public Service Commission,* 295 S.C. 429, 431, 368 S.E. (2d) 911, 912 (1988). *See also Parker v. South Carolina Public Service Commission,* 280 S.C. 310, 313 S.E. (2d) 290 (1984).

Here, the record merely includes the conflicting opinion testimony of the experts for Southern Bell and the Advocate. Southern Bell's expert, Mr. Payne, based his opinion that Southern Bell would suffer future losses on "a very extensive,

---

[1] The losses allegedly "demonstrated" by Southern Bell's experts were anticipated losses and had not at the time actually been suffered by Southern Bell.

[2] We note that, under the Advocate's proposed rule, the PSC could not consider, *inter alia,* the future effective date of a court ruling; the known promulgation of new regulations not at the time effective; or an agreement to lift an embargo or tariff affecting rates, in deciding whether to *lower* rates.

conservative study . . . performed to quantify the financial impact on Southern Bell's South Carolina intrastate operations resulting from changes to current commission policy for WATS service." (Tr. 83, 11. 12-17). This "study" referred to by Mr. Payne was never introduced into evidence before the PSC. We have previously held in a similar circumstance that the record is inadequate in such an instance.

In *Parker v. South Carolina Public Service Commission*, 281 S.C. 215, 314 S.E. (2d) 597 (1984), the PSC was to make a factual determination of a depreciation rate for rate making purposes. As in this case, the only "evidence" before the PSC on the issue was the opinion testimony of some witnesses. We held there that, "[w]hile witnesses gave their *opinions* that a four percent depreciation rate was reasonable for rate making purposes, these opinions are of no probative value in view of the fact that there is no evidentiary showing of the facts upon which the opinion is predicated." (Emphasis in the original). *Id.*, 281 S.C. at 217, 314 S.E. (2d) at 599. The same analysis and ruling apply in this case. There being no factual basis of record for the PSC's finding that Southern Bell would suffer future losses, we are constrained to rule that the lower court's judgment is REVERSED. We need not reach and thus express no opinion on the remaining issues presented.

GREGORY, C.J., and HARWELL, CHANDLER and FINNEY, JJ., concur.